24-1404
*Faison-Williams v. U.S.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of April, two thousand twenty-five.

PRESENT:
>    ROBERT D. SACK,
>    BETH ROBINSON,
>        *Circuit Judges,*
>    JOHN G. KOELTL,*
>        *District Judge.*

---

NATASHA FAISON-WILLIAMS,

>    *Plaintiff-Appellant,*

>    v.                                                          No. 24-1404

UNITED STATES OF AMERICA,

>    *Defendant-Appellee.*

---

---

* Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

FOR PLAINTIFF-APPELLANT: DOROLLO NIXON, JR., Nixon Disability Law, New York, NY.

FOR DEFENDANT-APPELLEE: CARLY WEINREB, Assistant United States Attorney (Benjamin H. Torrance, Assistant United States Attorney, *on the brief*), *for* Edward Y. Kim, Acting United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Rochon, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on March 20, 2024, is **VACATED** and the case is **REMANDED** for further proceedings.

Plaintiff-Appellant Natasha Faison-Williams brought this medical malpractice action under the Federal Tort Claims Act (FTCA) against Defendant-Appellee United States, alleging that her Veterans Affairs (VA) surgeon, Dr. James Stone, was negligent in scheduling and supervising a thoracic microdiscectomy.[1] In broad terms, her theory of liability, as explicated by her expert, was that the procedure was not indicated, and she suffered injury as a result of complications

---

[1] Faison-Williams also initially alleged that Dr. Stone performed the procedure negligently. She voluntarily dismissed that claim before the district court's rulings at issue on appeal.

from the procedure. In particular, Faison-Williams alleged that she suffered "constant pain, an epidural hematoma, right drop foot, right upper and lower extremity and right hip numbness, [and] decreased range of motion and effectiveness." Supp. App'x 5, ¶ 28. After extensive discovery, pursuant to Federal Rule of Evidence 702, the district court excluded Faison-Williams's expert testimony as to causation and granted summary judgment in favor of the government because Faison-Williams then had no admissible evidence to prove that Dr. Stone's alleged negligence caused her injuries. Faison-Williams appealed. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

## I.     Faison-Williams's Medical Course

In February 2017, Faison-Williams presented to Dr. Stone at the Manhattan VA hospital with reports of upper back and neck pain extending to her right arm and left leg, and "'intermittent headaches, gait disturbances, and intermittent incontinence of urine and stool.'" App'x 22, ¶ 19. After reviewing her records and imaging, Dr. Stone recommended an anterior cervical discectomy and fusion, which Faison-Williams underwent later that month. Faison-Williams does not

challenge Dr. Stone's choice to operate or his conduct during that February 27, 2017 procedure.

At a March 22, 2017 post-operative visit, Faison-Williams was walking with a cane and reported persistent right-sided weakness. Dr. Stone recommended a thoracic discectomy, and performed that operation on May 2. Faison-Williams went home from the hospital on May 3. On May 6, she "called the Manhattan VA reporting 'severe pain' going down to her legs, and that she could not walk." App'x 27, ¶ 45. On May 8, after imaging and evaluation, she underwent emergency surgery at the Manhattan VA to evacuate an epidural hematoma—a collection of blood and fluid that was compressing her spinal cord—that had developed following the thoracic discectomy.

After that successful procedure, Faison-Williams's condition improved, though at her May 24 follow-up appointment she reported that she had a right foot limp, still used a walker, and was still experiencing urinary incontinence. Several months later, in August 2017, Faison-Williams presented to another hospital complaining of "worsening back pain, right-sided pain and weakness, urge incontinence, and an inability to walk." App'x 30, ¶ 66. Providers were not

able to identify the cause of these deficits. She reported similar symptoms two months later.

After one incident in February 2018 in which she reported falling and then experiencing difficulty walking, for a period of over two years she walked without any assistive device and was observed to have a normal gait. Her condition turned in October 2020, and she reported "increased neck and back pain, numbness in her fingers and toes, and urinary incontinence," and she was no longer able to walk without crutches. App'x 32–33, ¶ 80. After a brief period of improvement, her condition deteriorated to the point that she was wheelchair bound.

## II. Proceedings Before the District Court

Faison-Williams retained Dr. Martin Zonenshayn, a neurological surgeon, as her expert on both the medical standard of care and the causal link between the thoracic microdiscectomy and her subsequent symptoms. Dr. Zonenshayn opined that Dr. Stone's decision to perform the thoracic surgery deviated from the standard of care because the surgery was not indicated. With respect to the causal link between the surgery and her post-surgical complaints, Dr. Zonenshayn opined that the thoracic microdiscectomy caused Faison-Williams's epidural hematoma, and that hematoma damaged her spinal cord, thereby causing her

bowel and bladder incontinence, leg weakness and numbness, and lower extremity pain. He did not suggest that Faison-Williams's later decline and ultimate disability was the result of the thoracic surgery and suggested that the later condition may have had a psychological source.

The district court excluded Dr. Zonenshayn as an expert on causation because he "failed to rule out obvious alternative causes of [Faison-Williams's] symptoms." *Faison-Williams v. United States*, No. 20-cv-08329, 2024 WL 1195033, at *11 (S.D.N.Y. Mar. 20, 2024).[2] In particular, the district court concluded that Dr. Zonenshayn failed to rule out cervical spine disease, preexisting conditions, and psychological causes in opining that the epidural hematoma caused a spine injury that gave rise to Faison-Williams's symptoms. "Given these deficiencies," the district court concluded that Dr. Zonenshayn's opinion was "not reliable." *Id.* at *13. Having excluded Dr. Zonenshayn's causation opinions, summary judgment for the government necessarily followed. *Id.* On appeal, Faison-Williams challenges the district court's evidentiary ruling; the government defends the district court's ruling and argues that we lack jurisdiction. We consider the latter issue first.

---

[2] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

### III.  Subject Matter Jurisdiction

The government contends that, because Faison-Williams's administrative claim only alleged that Dr. Stone "deviated from the accepted standard of medical care while performing" the thoracic microdiscectomy, Supp. App'x 682, she has not exhausted her administrative remedies with respect to her claim that Dr. Stone was negligent in scheduling the surgery.

Plaintiffs may bring FTCA claims only after exhausting their administrative remedies. *McNeil v. United States*, 508 U.S. 106, 113 (1993).  In relevant part, the FTCA requires a claimant to "have first presented the claim to the appropriate Federal agency" for its review.  28 U.S.C. § 2675(a).  To satisfy this jurisdictional presentment requirement, the administrative claim "must provide a reviewing agency with sufficiently specific information as to the basis of the claim, the nature of claimant's injuries, and the amount of damages sought such that the agency can reasonably understand what it must investigate to determine liability, to value the claim, and to assess the advisability of settlement."  *Collins v. United States*, 996 F.3d 102, 119 (2d Cir. 2021).

However, the one-page administrative claim is not required to meet pleading standards; it must just "be specific enough to serve the purposes

7

intended by Congress in enacting § 2675(a)—to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Johnson v. United States*, 788 F.2d 845, 848-49 (2d Cir. 1986). We have previously held that an administrative claim does not need to allege all the factual elements, if "a reasonably thorough investigation of the incident [would] uncover[] any pertinent information in the government's possession . . . ." *Id.* at 849.

Here, any investigation of Dr. Stone's performance of the thoracic microdiscectomy would also necessarily involve an investigation of the decision to recommend the surgery. Therefore, the district court had subject matter jurisdiction over this case.

**IV. District Court's Exclusion of Dr. Zonenshayn's Testimony**

Federal Rule of Evidence 702 allows expert witness testimony:

> if the proponent demonstrates . . . that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

8

Fed. R. Evid. 702. The district court plays the role of gatekeeper, determining whether the expert's testimony is reliable and relevant. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). We review the district court's decision "to admit or exclude expert testimony under [Rule 702] for abuse of discretion." *Id.* at 264. "A decision to admit or exclude expert scientific testimony is not an abuse of discretion unless it is manifestly erroneous." *Id.* at 265.

On appeal, Faison-Williams argues the district court exceeded its discretion by failing to give enough weight to Dr. Zonenshayn's extensive experience, relying solely on the "obvious alternative cause" test in assessing the reliability of Dr. Zonenshayn's testimony, misapplying that test, and failing to take into account Dr. Zonenshayn's testimony about the potential alternative explanations for the relevant symptoms. We agree with Faison-Williams on the last two points only.

The district court was permitted to conclude that, even given Dr. Zonenshayn's experience, his testimony was not reliable. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999) (approving the district court's reasoning that "did not doubt Carlson's qualifications" but rather "excluded the testimony because, despite those qualifications, it . . . found unreliable[] the methodology employed by the expert . . .").

Second, the district court has broad discretion to choose a method to evaluate reliability. *Amorgianos*, 303 F.3d at 265. One of the factors courts have used to determine reliability is "[w]hether the expert has adequately accounted for obvious alternative explanations." Fed. R. Evid. 702, Advisory Committee Notes to 2000 Amendment.

In setting forth the applicable standards, the district court properly recognized that an expert is not required to "categorically exclude each and every possible alternative cause," but that if an expert fails to "adequately account[] for obvious alternative explanations," the testimony is not reliable. *Faison-Williams*, 2024 WL 1195033, at \*10. But in applying the standard, the court found Dr. Zonenshayn's testimony unreliable because he "failed to rule out" various alternative causes for Faison-Williams's symptoms. *Id.* at \*11. That's a higher bar.

Moreover, the district court did not recognize that Dr. Zonenshayn *did* offer nonconclusory explanations regarding potential alternative causes of the relevant symptoms based on his years of experience as a board-certified neurosurgeon who has performed at least 200 thoracic laminectomies, including microdiscectomies. In explaining why he concluded that the epidural hematoma injured Faison-Williams's spinal cord, Dr. Zonenshayn relied heavily on MRI images that showed

a "very high grade spinal cord compression by the hematoma" before the evacuation and an "acute spinal cord injury" after the evacuation that had not been present before. App'x 304. He testified that the most common symptoms associated with that kind of spinal cord injury are leg weakness, trouble with sensation in the legs, and bowel and bladder trouble, and he explained that sometimes the bladder function problems and difficulties walking emerge several months after "spasticity starts to set in." App'x 311.

As the district court highlighted, Dr. Zonenshayn recognized that *cervical* myelopathy (that is, compression of the spinal cord in the neck) *can* cause gait imbalance, leg weakness, and urinary and bowel incontinence. But he explained how he determines whether these symptoms arise from a cervical or a thoracic cause: If the patient has objective upper extremity symptoms or other symptoms that are "classic for cervical myelopathy," then the cervical spine is likely the cause. App'x 341. In addition, Dr. Zonenshayn testified that he did not find it "plausible whatsoever given the imaging" that Faison-Williams's condition declined because of cervical myelopathy. App'x 367.

With respect to pre-existing bladder issues, Dr. Zonenshayn acknowledged that Faison-Williams had reported intermittent urinary issues years before the

11

surgery here, but he said that after the epidural hematoma she had a continuous and more dramatic problem; there was documentation that she was wearing adult diapers or catheterizing herself; and a urodynamic study documented neurogenic injury. He thought it highly unlikely that her prior problems resulted from some prior thoracic spine compression because there was no evidence of such an injury before the epidural hematoma, and spinal compression that is severe enough to cause bowel and bladder symptoms would not resolve spontaneously and not show up on imaging.

Dr. Zonenshayn also acknowledged that giving birth to approximately six children could cause bladder issues and incontinence, but he explained that here any such issues were significantly worsened by the thoracic spinal cord injury. He also pointed to a subsequent urodynamic study that was more consistent with a neurogenic issue, which is typically unrelated to childbirth, to explain his conclusion that the urinary issues were "much more related to the thoracic spine rather than her multiple childbirths." App'x 326-27.

And as to psychological causes, Dr. Zonenshayn acknowledged that Faison-Williams's later decline could not be fully explained by objective evidence and likely reflected a "psychological overlay." App'x 333. But he also said her MRI

showed severe compression of the spinal cord in the thoracic region, at the level of the hematoma, that "you can't . . . make up." App'x 329. Regarding conversion disorder in particular, he explained that if symptoms are significantly worse than or do not anatomically correlate with the radiographic findings, conversion disorder is a consideration. As set forth above, Dr. Zonenshayn testified that wasn't the case here.

In short, in explaining his opinion on causation, Dr. Zonenshayn not only explained why he thought Faison-Williams's leg weakness and bladder issues were caused by the epidural hematoma, he explained why he rejected each of the potential alternative explanations for her symptoms. It was "manifestly erroneous" for the district court to find that Dr. Zonenshayn did not adequately address the possible alternative causes of Faison-Williams's symptoms. *Amorgianos*, 303 F.3d at 265. The district court may conclude on summary judgment that Dr. Zonenshayn's causation testimony is legally insufficient to support certain damage claims—a question we decline to address in the first instance. And it may, in its capacity as factfinder, conclude that Dr. Zonenshayn's testimony is unpersuasive. But we conclude that the record does not support the exclusion of Dr. Zonenshayn's causation testimony under Federal Rule of

13

Evidence 702.  Accordingly, because the district court exceeded its discretion in excluding Dr. Zonenshayn's report, it improperly granted summary judgment without considering whether Dr. Zonenshayn's evidence created a genuine issue of material fact.

* * *

For the reasons explained above, the district court's judgment is **VACATED** and the case is **REMANDED** for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court